IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RUTH PARKER,<br><br>　　　　PLAINTIFF,<br>v.<br><br>DELOITTE CONSULTING LLP,<br><br>　　　　DEFENDANT. | Civil Action No.: _____<br><br>JURY TRIAL DEMANDED |

## COMPLAINT AND JURY DEMAND

Plaintiff Ruth Parker, by and through her undersigned attorneys, Bell & Bell LLP, hereby files the following Complaint and Jury Demand ("Complaint").

## PRELIMINARY STATEMENT

1. This is an action for an award of damages, liquidated damages, punitive damages, attorneys' fees and other relief on behalf of Plaintiff Ruth Parker, a former employee of Deloitte Consulting LLP ("Deloitte" or "Defendant"). Ms. Parker was discriminated against and harassed on the basis of her age and disability or perceived disability, was retaliated against for her complaints of discrimination and harassment, and was retaliated against for seeking accommodations of her disability.

2. This action is filed pursuant to the Age Discrimination in Employment Act, 29 U.S.C. § 621, et seq. ("ADEA"), the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, et seq. and the Pennsylvania Human Relations Act, 43 P.S. § 951, et seq. ("PHRA").

## JURISDICTIONAL STATEMENT

3. This Court has original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States pursuant to 28 U.S.C. §§ 1331 and 1391.

4. The jurisdiction of this Court is also invoked pursuant to 28 U.S.C. § 1343(4), which grants the District Court original jurisdiction in any civil action authorized by law to be commenced by any person to recover damages to secure equitable or other relief under any act of Congress providing for the protection of civil rights.

5. This Court has supplemental jurisdiction over any Pennsylvania state law claims pursuant to 28 U.S.C. § 1367.

6. All conditions precedent to the institution of this suit have been fulfilled. On February 5, 2020, Plaintiff timely filed a Complaint of Discrimination with the Pennsylvania Human Relations Commission ("PHRC"), which was dual-filed with the United States Equal Employment Opportunity Commission ("EEOC"). On April 7, 2021, the EEOC issued a Notice of Right to Sue to Plaintiff. With respect to the PHRA claims herein, it has been more than one year since Plaintiff dual-filed her Charge with the PHRC.

## VENUE

7. This action properly lies in the Eastern District of Pennsylvania, pursuant to 28 U.S.C. § 1391(b).

8. This action properly lies in the Eastern District of Pennsylvania because the claims and significant activities associated with those claims arose in this judicial district, and Plaintiff was employed by Defendant in this judicial district.

## PARTIES

9. Plaintiff Ruth Parker is a sixty-seven-year-old adult female citizen and resident of King of Prussia, Pennsylvania and the United States of America.

10. Ms. Parker is a qualified individual with a disability within the meaning of the ADA.

11. Ms. Parker has a hearing impairment that makes it difficult for her to hear people speak, audio from software, and other sounds.

12. Ms. Parker has had her disability for a period far in excess of six months.

13. Ms. Parker's disability affects a major bodily function and substantially limits one or more major life activities.

14. Defendant Deloitte Consulting LLP is a consulting firm with several locations throughout the United States, including the one located at 1700 Market Street, Suite 2700, Philadelphia, Pennsylvania, where Plaintiff had been employed.

15. At all relevant times, Defendant is and has been an employer employing more than 500 employees.

16. At all relevant times, employees of Defendant acted as agents and servants for Defendant.

17. At all relevant times, employees of Defendant were acting within the scope of their authority and in the course of employment under the direct control of Defendant.

18. At all times material hereto, Defendant acted by and through its authorized agents, servants, workmen and/or employees acting within the course and scope of their employment with Defendant and in furtherance of Defendant's business.

19. At all relevant times hereto, Plaintiff Ruth Parker was an "employee" of Defendant within the meanings of the laws at issue in this suit and is accordingly entitled to the protection of said laws.

20. At all relevant times hereto, Defendant was an "employer" and/or "person" under the laws at issue in this matter and is accordingly subject to the provisions of said laws.

21. During her employment, Deloitte regarded Ms. Parker as disabled.

22. Defendant does significant business within the Commonwealth of Pennsylvania.

23. This Honorable Court has jurisdiction over Defendant.

**FACTS**

24. Ms. Parker has over fifteen (15) years combined experience working on management consulting service.

25. Due to a medical condition, Ms. Parker took time off and subsequently had an employment gap of over two years.

26. On June 10, 2019, Ms. Parker was accepted to Deloitte's Encore Program ("Encore Program"), which is specifically designed for workers who have been out of the workforce for over two years.

27. The Encore Program is a fourteen-week paid program where participants are onboarded and trained in the same manner as regular hires with the goal of rolling them directly into a full-time offer in early October.

28. The Encore Program includes orientation, mentoring through an onboarding advisor, assignment to a deployment specialist to be assigned to client projects, and training at Deloitte University.

29. On or about July 14, 2019, Ms. Parker began her position with Deloitte as a Consultant in the Enterprise Operations group based in Philadelphia, Pennsylvania.

30. During her tenure with Deloitte, Ms. Parker performed her duties in an excellent and hardworking manner.

31. Despite her loyalty and consistent performance, Ms. Parker was harassed and discriminated against on the basis of her age and disability or perceived disability, and was retaliated against for her complaints about discrimination and harassment, and for seeking accommodations of her disability.

32. From the very start of Ms. Parker's employment, Ms. Parker became aware of Deloitte's complete lack of hearing-impaired accessibility.

33. On July 15, 2019, Ms. Parker received an email from Laura Cockrell, Finance and Enterprise Performance ("F&EP") Deployment Specialist for F&EP Strategy & Transformation that outlined information resources available, some of which included audio only information that did not contain any text or closed captioning.

34. That same date, Ms. Parker also received a message from Deloittenet containing training and knowledge videos, none of which contained any text or closed captioning.

35. On July 16, 2019, Ms. Parker received an email from John Edwards, Philadelphia Office Consulting Manager, about onboarding and identifying Philadelphia resources; Bhargau Nutaki, Office Ambassador; Jay Glode, Philadelphia Office Team Leader (Philadelphia functions); and Mark Keragelian, Consultant, Onboarding Advisor, regarding the two-week training she was to undergo for her position.

36. July 17, 2019, Ms. Parker received a Global E-learning email regarding the training, which included Webcasts and PowerPoint slides containing audio, none of which contained text or closed captioning.

37. Later that day, Ms. Parker also had a follow-up call regarding the W2DC Resource Management Session, an orientation program, which contained no script or closed captioning.

38. Many of the software and platforms used by Deloitte – including Skype, Zoom, Saba Meeting, PowerPoint, and other video or audio software – require audio capability that is outside of Ms. Parker's hearing capability without an accommodation.

39. As a result, Ms. Parker asked for accommodations for her disability that would enable her to participate in team meetings and to carry out her job duties.

40. The accommodations requested included headsets that are hearing aid compatible, turning on the live captioning feature and subtitles in Skype, Zoom closed captioning, closed captioned office telephones or videophones, conversation of PowerPoint audio to text or the provision of a script for PowerPoint audio, uploading of PowerPoint slides to YouTube for automatic closed captioning, and the provision of Computer Assisted Realtime Transcription (CART) services, which recruits a CART writer to produce readable translation in English in real-time.

41. All of the requested accommodations were either free or available at a nominal cost and would not have created an undue hardship, or any hardship, on Deloitte.

42. Despite the ease of acquiring and implementing the accommodations, Deloitte refused to grant Ms. Parker any of the accommodations requested.

43. By way of example, on July 18, 2019, Ms. Parker received an email from Megan Pepper who was coordinating rooms at Deloitte University for the July 24-25, 2019 Encore Training regarding reservation of a hearing-impaired room for Ms. Parker.

44. Ms. Pepper stated in the email that the room was equipped with a vibrating alarm under the pillow and flashing doorbell lights in the event of fire.

45. The following day, on July 19, 2019, Ms. Parker responded to Ms. Pepper requesting the provision of a caption phone.

46. Ms. Pepper responded later that day stating that Ms. Parker's request could not be accommodated.

47. By way of another example, on July 22, 2019, Ms. Parker requested an amplified headset for her computer and indicated that she could not use the laptop speakers and the standard issued headset was not compatible with hearing aids without significant feedback.

48. Ms. Parker arrived at Deloitte University on July 23, 2019 – one day earlier than had originally been planned – as instructed by Lawrence Hasten, Recruiter.

49. As soon as the training began, Ms. Parker was subjected to unfair treatment, harassment and discrimination on the basis of her disability or perceived disability and age.

50. During a classroom training session led by Anjali Sinha, Senior Manager, Ms. Parker was experiencing difficulty hearing the presenters and audio portions of videos and presentations.

51. During a break, Ms. Parker informed Ms. Sinha that she had a hearing impairment and was having difficulty hearing the presentations.

52. Ms. Sinha merely told Ms. Parker to "sit closer to the front," which would take Ms. Parker out of the working group that she was in, singling her out and effectively isolating Ms. Parker from the group and denying her the ability to respond to any questions asked of the group.

53. Following the training, on August 1, 2019, Ms. Parker made a request for closed caption support for Skype for Business – a platform used by Deloitte.

54. The following day, on August 2, 2019, Robert T. Anderson responded to Ms. Parker's request stating that there were no translator, transcript, or script options implemented at Deloitte.

55. That same day, Ms. Parker requested that Skype Translator be added, which translates live speech to text for screen display, and shared some information regarding the addition of the feature.

56. Mr. Anderson then sent an email indicating that he escalated Ms. Parker's request to the Engineering Manager and the vendor for hearing impaired support.

57. On August 5, 2019, Mr. Anderson sent Ms. Parker an email indicating that he needed more time for assessment.

58. The following day, on August 6, 2019, Mr. Anderson sent Ms. Parker an email with headset vendor recommendations, none of which could be used with hearing aids.

59. Deloitte's failure to provide Ms. Parker with accommodations for her disability resulted in Ms. Parker being unable to meaningfully participate in any office conference calls, on-site meetings, or training videos; use any telephone equipment on site to communicate with colleagues or project staffers; use the company issued laptop for audio portions of any collaborations; use Deloitte telephones or communications equipment; or understand audio portions of team meetings, all hands calls, presentations, or anything that used a slide capability with audio narrative.

60. The lack of accommodations also forced Ms. Parker to make all calls from home using her own equipment for individuals who are deaf or hard of hearing, separating herself from her colleagues and peers and negatively impacting her required participation in site collegial networking.

61. For example, on August 9, 2019, Ms. Parker was unable to participate in a call with Amit Ahuja, and several others, at the office, and had to so from home using her own closed-captioned phone.

62. From August 19, 2019 to September 20, 2019, Ms. Parker was assigned to a project based in Greenwood, Colorado.

63. Ms. Parker was assigned to a three-person team, which, along with Ms. Parker, included Senior Consultant and Team Lead A.J. Dulik, who had been with Deloitte for approximately seven months, and Senior Consultant Alexander Schmitt, who had been with Deloitte for approximately three weeks.

64. Neither Mr. Dulik nor Mr. Schmitt had any previous management consulting experience, whereas Ms. Parker had been with Deloitte four weeks at the time and had over ten (10) years of combined experience working on digital transformation projects.

65. On the afternoon of the first day of the project, Ms. Parker received a briefing from both Mr. Dulik and Mr. Schmitt.

66. Ms. Parker raised some questions regarding the project framework, and when Ms. Parker had trouble hearing their responses, she asked them to repeat.

67. After a couple of times of Ms. Parker indicating she could not hear their responses, Mr. Dulik and Mr. Schmitt began to disregard Ms. Parker's questions altogether.

68. Later, a senior manager from another group joined Ms. Parker, Mr. Dulik, and Mr. Schmitt and began discussing the project.

69. During the conversation, Ms. Parker indicated that she had a hearing impairment and did not understand what the senior manager had said.

70. Ms. Parker asked if they could face her when they spoke to her so that she might be able to hear them.

71. Both Mr. Dulik and Mr. Schmitt ignored the request and proceeded to intentionally isolate Ms. Parker from their discussions and not fulfill a simple request to face Ms. Parker when they were speaking.

72. After the senior manager left, Mr. Schmitt mouthed to Mr. Dulik "why are you even here?" in reference to Ms. Parker.

73. The next morning, Mr. Dulik removed Ms. Parker from the group office and placed her in a cube away from the working group, isolating Ms. Parker from any team participation.

74. Ms. Parker was thereafter excluded from all client interactions and meetings, except two, over the five-week period of the project.

75. Throughout the duration of the project, Ms. Parker was repeatedly harassed by Mr. Dulik and Mr. Schmitt.

76. For example, Mr. Dulik and Mr. Schmitt would intentionally lower their voices when speaking with Ms. Parker.

77. On several occasions, when Ms. Parker would look out the window while waiting for Mr. Dulik and Mr. Schmitt, both would come up behind Ms. Parker to watch her jump after startling her.

78. On one occasion, Mr. Schmitt told Ms. Parker, "you're as old as my mother."

79. When Ms. Parker tried to schedule a meeting to discuss these incidents, she was ignored.

80. This discriminatory and harassing behavior spilled over onto the junior members of another team.

81. In one instance, Mattie Wheaton, Business Analyst, remarked, "Aren't you too old to be an intern?"

82. Mr. Dulik also exhibited a complete disregard for the safety and welfare of Ms. Parker following an injury she suffered when, on September 9, 2019, she stumbled and fell, hurting her left leg.

83. On September 14, 2019, Ms. Parker went to the Emergency Room and was diagnosed with a partially torn PCL and blood clots in her leg.

84. Ms. Parker was strongly advised not to travel by air and was warned about the possible lethal effects of doing so and the possibility of a fatal embolism from the blood clots.

85. Ms. Parker communicated this to Mr. Dulik later that day.

86. In a return email, Mr. Dulik adamantly insisted that Ms. Parker be in Denver the following Monday, on September 16, 2019.

87. Ms. Parker protested and indicated that, with blood clots, this was a potentially life-threatening condition

88. Mr. Dulik insisted that Ms. Parker fly anyway.

89. The continued pattern of harassment and verbal abuse directed at Ms. Parker on the basis of her age and disability, and the complete lack of concern for her safety, was perpetrated and/or observed by Carlos Amaral, Kort Syversen, Doug Plotkin, Mattie Wheaton, Domenica Wambold, Mr. Dulik, and Mr. Schmitt at various times.

90. On September 6, 2019 and September 9, 2019, Ms. Parker complained to Mark Keragelian, her onboarding advisor, and Shruthi Chakravathy, her coach, about the discrimination and harassment to which she was being subjected.

91. Neither Mr. Keragelian nor Ms. Chakravathy took any corrective action.

92. Instead, soon thereafter, on September 16, 2019, Mr. Dulik gave Ms. Parker a poor performance rating.

93. On September 25, 2019, Ms. Parker exchanged emails and messages with Mr. Keragelian and Ms. Chakravathy expressing her dismay at the communication progress with Mr. Dulik and indicated that his exclusionary behavior, unwillingness to address her hearing impairment, and repeated refusal to schedule weekly meetings with her were impacting her contributions to the project.

94. Despite failing to set Ms. Parker up for success by denying her requested accommodations, Deloitte nevertheless expected and pressured Ms. Parker to perform at the level of her non-disabled colleagues, causing Ms. Parker to suffer from extreme stress.

95. At the end of Ms. Parker's period with Deloitte's Encore Program, Deloitte failed to hire Ms. Parker on a permanent basis.

96. Other younger, non-disabled temporary hires were offered full-time employment.

97. The facts alleged herein demonstrate the discriminatory animus held by Deloitte against Ms. Parker, on the basis of her age and disability or perceived disability.

98. Deloitte's allegation that Ms. Parker was not hired on a permanent basis due to poor performance is pretext for discrimination, harassment and retaliation.

99. The reasons given for Deloitte's failure to hire Ms. Parker on a permanent basis were pretext, as Ms. Parker had been an exceptional employee and had only sought to obtain accommodations for her disability.

100. The above facts indicate that Deloitte aggressively sought to deny Ms. Parker accommodations that would allow her to execute her job, and then imposed expectations in order to keep her job.

101. Moreover, once Ms. Parker complained about the severe and pervasive discrimination and harassment that she had been subjected to, Deloitte retaliated against Ms. Parker by providing a poor performance review and then ending her employment while retaining younger, non-disabled employees.

102. The treatment Deloitte subjected Ms. Parker to during her employment indicates that the real reason for Deloitte's failure to hire Ms. Parker on a permanent basis was discrimination and retaliation on the part of Defendant.

103. The reasons provided for Defendant's failure to hire Ms. Parker full-time were pretextual.

104. Despite her loyalty, dedication and consistently excellent performance, and given her treatment during her employment with Deloitte (including, but not limited to, Deloitte's failure to hire Ms. Parker on a permanent basis), Ms. Parker maintains that Deloitte harassed and discriminated against her on the basis of her age and disability or perceived disability, retaliated against for complaining about discrimination and harassment, and retaliated against her for requesting accommodations.

105. Ms. Parker has suffered significant emotional hardship and loss due to Defendant's wrongful acts, as alleged herein.

106. Ms. Parker has suffered and continues to suffer mental anguish and severe emotional distress as a proximate result of the actions and/or inactions of Defendant.

107. Defendant discriminated against Ms. Parker because of her age and disability or perceived disability, and retaliated against Ms. Parker for complaining of the discrimination and for seeking accommodations, in violation of the ADEA, the ADA and the PHRA.

108. Ms. Parker has suffered mental anguish and severe emotional distress as a direct and proximate result of the actions and inactions of Defendant.

109. Defendant and its agents acted with the intent of causing or with reckless disregard for the probability that their actions would cause Ms. Parker severe emotional distress.

110. Ms. Parker has suffered financial losses, which include, among other things, lost wages, and an obligation for attorneys' fees and costs of bringing suit, as a proximate result of the actions and inactions of Defendant.

## COUNT I
### Age Discrimination in Employment Act, 29 U.S.C. § 621, et seq.

111. Plaintiff Ruth Parker repeats and incorporates by reference the allegations of all previous paragraphs as if fully set forth at length herein.

112. Based on the foregoing, Defendant engaged in unlawful employment practices in violation of the ADEA.

113. Plaintiff is and was at the time Deloitte failed to hire her, over forty years of age, and an individual within the class protected by the ADEA.

114. In discriminating against and harassing Ms. Parker because of her age, and in retaliating against Ms. Parker for her complaints of discrimination and harassment, Defendant violated the ADEA.

115. Defendant's violations were intentional and willful.

116. Defendant's willful violations of the ADEA warrant an award of liquidated damages.

117. As the direct result of the aforesaid unlawful employment practices engaged in by Defendant, Plaintiff Ruth Parker has sustained a loss of earnings, loss of severance, retirement and other benefits, loss of incentive and bonus payments, severe emotional and psychological distress, loss of self-esteem, loss of reputation and opportunity for career

advancement, loss of future earning power, as well as back pay, front pay and interest due thereon, and has incurred attorneys' fees and costs.

118. Defendant's willful violations of the ADEA warrant an award of liquidated damages.

## COUNT II
## The Americans with Disabilities Act, 42 U.S.C. § 12101, et seq.

119. Plaintiff Ruth Parker repeats and incorporates by reference the allegations of all previous paragraphs as if fully set forth at length herein.

120. Based on the foregoing, Defendant engaged in unlawful employment practices in violation of the Americans with Disabilities Act.

121. In discriminating against and harassing Ms. Parker on the basis of her disability and/or because Defendant regarded Ms. Parker as disabled, in retaliating against Ms. Parker for her complaints about discrimination and harassment, in retaliating against Ms. Parker for seeking reasonable accommodations, and in failing and refusing to engage in a good faith, interactive process with respect to accommodating Ms. Parker, Defendant violated the ADA.

122. Said violations were intentional and willful.

123. Said violations warrant the imposition of punitive damages.

124. As the direct and proximate result of Defendant's violation of the Americans with Disabilities Act, Plaintiff Ruth Parker has sustained loss of earnings, loss of severance, retirement and other benefits, loss of incentive and bonus payments, severe emotional and psychological distress, loss of self-esteem, loss of reputation and opportunity for career advancement, loss of future earning power, as well as back pay, front pay, and interest due thereon, and has incurred attorneys' fees and costs.

## COUNT III
### Pennsylvania Human Relations Act, 43 P.S. § 951, et seq.

125. Plaintiff Ruth Parker repeats and incorporates by reference the allegations of all preceding paragraphs as if fully set forth at length herein.

126. Based on the foregoing, Defendant engaged in unlawful employment practices in violation of the Pennsylvania Human Relations Act.

127. In discriminating against and harassing Ms. Parker on the basis of her age and disability or because Defendant regarded Ms. Parker as disabled, in denying Ms. Parker requested accommodations, and in retaliating against Ms. Parker for her complaints and for seeking reasonable accommodations, Defendant violated the PHRA.

128. As the direct and proximate result of Defendant's violations of the Pennsylvania Human Relations Act, Plaintiff Ruth Parker has sustained a loss of earnings, severe emotional and psychological distress, loss of self-esteem, loss of future earning power, as well as back pay, front pay, and interest due thereon, and has incurred an obligation for attorneys' fees and costs.

### PRAYER FOR RELIEF

129. Plaintiff Ruth Parker repeats and incorporates by reference the allegations of all previous paragraphs as if fully set forth at length herein.

**WHEREFORE**, Plaintiff Ruth Parker respectfully requests that this Court enter judgment in her favor and against Defendant and Order:

   a. Appropriate equitable relief;

   b. Defendant to compensate Plaintiff with a rate of pay and other benefits and emoluments of employment to which she would have been entitled had she not been subjected to unlawful discrimination, harassment and retaliation;

c. Defendant to compensate Plaintiff with the wages and other benefits and emoluments of employment lost because of its unlawful conduct;

d. Defendant to pay Plaintiff punitive damages;

e. Defendant to pay Plaintiff liquidated damages;

f. Defendant to pay Plaintiff compensatory damages for future pecuniary losses, pain and suffering, inconvenience, mental anguish, loss of employment and other nonpecuniary losses as allowable;

g. Defendant to pay Plaintiff's costs of bringing this action and her attorneys' fees;

h. Plaintiff be granted any and all other remedies available pursuant to the ADEA, the ADA, and the PHRA; and

i. Such other and further relief as is deemed just and proper.

## JURY DEMAND

Plaintiff hereby demands trial by jury as to all issues so triable.

                        */s/ Christopher A. Macey, Jr.*
                        Christopher A. Macey, Jr., Esquire
                        Bell & Bell LLP
                        One Penn Center
                        1617 JFK Blvd. – Suite 1254
                        Philadelphia, PA  19103

                        *Attorneys for Plaintiff Ruth Parker*

Dated:  June 25, 2021